### 14199. SIMMEMON *v.* THE STATE.

BROYLES, C. J. 1. Under the facts of the case the court did not err in refusing to rule out evidence as to alleged dying declarations, as complained of in the 1st and 2d grounds of the amendment to the motion for a new trial.

2. The charge of the court upon the subject of dying declarations was not error for any reason assigned.

3. The statement of the accused authorized and demanded a charge upon the law of manslaughter.

4. The verdict was authorized by the evidence, and the court did not err in overruling the motion for new trial.

*Judgment affirmed. Luke and Bloodworth, JJ., concur.*

DECIDED APRIL 10, 1923.

Indictment. for murder — conviction of manslaughter; from Stephens superior court — Judge J. B. Jones.   October. 26, 1922.

Van Herrin was shot by the defendant, John Simmemon,. and on the morning of the shooting and a few minutes before a surgical operation was performed upon him, which was soon followed by his death, his father, Ben N. Herrin, and his mother, according to the testimony, talked with him, at the house at which the shooting occurred, and he made statements to them in regard to it.   These statements counsel for the defendant, at the close of the direct examination, moved to rule out, on the ground that they were irrelevant, immaterial, and hearsay, and did not meet the requirements of the law as a dying statement, " the proper foundation not having been laid."  Ben N. Herrin testified: " I says, ' Van, the doctors say there ain't no chance for you, not one out of a hundred ' (they had done told me that).  I was standing by his side and he was wanting something and sent for his mother to come to him, and he took one hand and took hold of her hand and put the other around her neck, and says, ' Mother, you are the dearest on earth to me;' and then he says, ' I will never see you any more.  Meet me in heaven.'  This occurred about fifteen minutes before the operation.  Just before my son was operated on I went up to him; . . he had his eyes shut, lying on the bed, and I told him I wanted him to tell how it occurred, and let it be good or bad on Van. . .  He told his mother good-bye just after he made this statement, and he told her he would never see her any more.  I told him that the doctor said there was just one chance in a hundred for him, and he said, ' That's what they told me.' . .  When me and my wife both were talking to him we thought he was dying,. but he seemed to be in his right mind. He never came through the operation; he died from the loss of blood."   His mother testified that he was lying on the operating table when she went to him, and that he put his arm around her neck and said, " Mother, you are the dearest thing on earth to me, and if I never wake up no more, I want you to meet me in heaven." " He seemed to be very much excited.  I couldn't say that I noticed any change in his condition from what it was all the time."

The charge of the court on dying declarations was alleged to be error " for the reason that no dying declarations which meet the requirements of the law were introduced in evidence, and the

proper foundation for the same was not laid." In this part of the charge the court stated that unless the evidence introduced by the State as dying declarations came up to the requirements of the law, the jury could not consider them.

*Fermor Barrett,* for plaintiff in error.

*Robert McMillan, solicitor-general, Joseph G. Collins,* contra.